Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010-3027
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| JANICE ZELLERINO, *individually and on behalf of others similarly situated,*<br><br>　　　　　*Plaintiff*,<br><br>　　　*v.*<br><br>ANDREW ROOSEN, SALEM SHUBASH, ARMORED INVESTMENT GROUP, DATAMYX, LLC, *and* EQUIFAX INFORMATION SERVICES, LLC,<br><br>　　　　*Defendants*. | Case No. 16-cv-485<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Janice Zellerino files this class action complaint, seeking statutory damages for willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., against Andrew Roosen, Salem Shubash, Armored Investment Group, Datamyx LLC, and Equifax Information Services, LLC, ("Defendants"). Ms. Zellerino brings this lawsuit based upon the illegal sale of her private credit report information for impermissible marketing purposes.[1]

## I.   PARTIES

1.   Plaintiff Janice Zellerino resides in Wayne County, Michigan, and is a citizen of Michigan.

2.   Defendant Andrew Roosen is an individual doing business in California who, on information and belief, resides in this judicial district. He can be served with process at 9241 Irvine Blvd., Suite 200, Irvine, California, 92618, or wherever he may be found.

3.   Defendant Salem Shubash, a/k/a Kamel Shubash, a/k/a Mel Shubash, is an individual doing business in California who, on information and belief, resides in this judicial district. He can be served with process at 9241 Irvine Blvd., Suite 200, Irvine, California, 92618-1694, or wherever he may be found.

4.   Defendant Armored Investment Group, Inc. d/b/a Armored Home Loans, Armored Home Savers, Armored Identity, Armored Investments, Armored Money Card, Armored Real Estate, Armored Debt Center, and Armored Systems ("Armored") is a corporation doing business in California. Armored can be served through its resident agent, Andrew Roosen, 9241 Irvine Blvd, Suite 200, Irvine CA 92618-1694.

---

[1] Ms. Zellerino's allegations are made on personal knowledge as to her experiences and upon information and belief based on the investigation of her counsel as to all other matters.

5.   Defendant Datamyx, LLC ("Datamyx") is a Delaware limited liability company that maintains its principal place of business in Florida and does business in all 50 states. It can be served with process through its registered agent in Florida, Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

6.   Defendant Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company that can be served with process through its registered agent in California, The Prentice-Hall Corporation System, Inc., d/b/a CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

7.   On information and belief, Roosen and Shubash exercised pervasive and continual control over the day-to-day operations of Armored such that Armored operated at all relevant times as an agent of Roosen and Shubash. Roosen and Shubash entered into an agreement with Equifax and Datamyx on behalf of Armored in their own names, holding themselves out as its principals.

8.   On information and belief, Armored operated at all relevant times as the alter ego of Roosen and Shubash because there existed such a unity of interest between Roosen and Shubash and Armored that the separate personalities of the corporation and the individuals no longer existed. Roosen and Shubash used the same office as Armored, at 9241 Irvine Blvd., Suite 200, Irvine, California, 92618-1694, and used Armored as a mere shell, instrumentality, or conduit for their business operations. All of Armored's stock was owned by Roosen and Shubash, who are close business associates and have operated a number of businesses together over many years. Furthermore, Armored operated under a number of assumed d/b/a names, creating public confusion regarding Armored's identity. Roosen and Shubash used these multiple entities to conceal their improper use of consumer reports, effectively using one entity to obtain the reports and another to

deliver improper marketing materials. It would therefore result in inequity if Armored's acts were treated as the acts of the corporation alone.

## II.  JURISDICTION AND VENUE

9.   This Court has federal question jurisdiction under 28 U.S.C. § 1331, because this action arises under 15 U.S.C. § 1681, et seq. This Court also has diversity jurisdiction over this case under 28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, and there are members of the Class who are citizens of a different state from Defendants.

10. A substantial part of the events giving rise to Plaintiff's claims occurred in Irvine, Orange County, California. Venue is therefore appropriate in the Central District of California under 28 U.S.C. § 1391.

## III.  STATUTORY BACKGROUND OF THE FCRA

11.  The FCRA is a comprehensive scheme designed to safeguard the privacy of consumers' credit information. It became effective in 1971 and has been in force since that date.

12.  The FCRA governs the reporting, use, and sale of information bearing on consumers' creditworthiness. A key component of Congress' oversight is the requirement that consumer reporting agencies ("CRAs") may furnish consumer reports only for the purposes enumerated in the statute ("Permissible Purposes"). These Permissible Purposes include, among others, use of the information: (1) to verify the consumer's creditworthiness in connection with a credit transaction; (2) to verify eligibility for employment; (3) in connection with underwriting of insurance for the consumer; and (4) in connection with a transaction initiated by the consumer; as well as other legitimate business needs for the information. 15 U.S.C. § 1681b(a)(1)–(6).

13. Under the FCRA, consumers' private information bearing on creditworthiness may not be used without their consent for marketing or

promotional purposes other than those specifically enumerated in the FCRA for prescreened offers of credit.

14. In order to ensure that CRAs furnish consumer reports only in accordance with section 1681b, Congress established compliance procedures in 15 U.S.C. § 1681e. Section 1681e requires CRAs to "maintain reasonable procedures designed to…limit the furnishing of consumer reports to the purposes listed under [§ 1681b]."

15. When a prospective user of a consumer report is "new," the CRA must make reasonable efforts to verify that user's identity and to verify that the user has a permissible use for obtaining a consumer report. If a CRA has reasonable grounds to believe a user will not use a report for a Permissible Purpose, it may not furnish a consumer report.

16. 15 U.S.C. § 1681e(e) imposes requirements on persons who procure consumer reports for resale. It requires those persons to certify to the CRA that the end users of the reports are using them for a Permissible Purpose and also to establish reasonable procedures designed to ensure that the persons to whom they are reselling the consumer reports will use them for a Permissible Purpose.

17. 15 U.S.C. § 1681(g) gives consumers, upon request, a right to disclosure of persons who procured their reports for any purpose within the year preceding the consumer's request.

18. 15 U.S.C. § 1681b(f) prohibits users of consumer reports from obtaining them for any purpose other than one permitted by the statute.

19. 15 U.S.C. § 1681q imposes fines upon anyone who knowingly and willfully obtains consumer information from a CRA under false pretenses.

20. 15 U.S.C. § 1681n imposes statutory damages for any willful violation of the statute.

– 5 –

## IV. FACTUAL ALLEGATIONS

**A. Armored illegally purchased Ms. Zellerino's report for marketing purposes.**

21. Ms. Zellerino encountered financial troubles that ultimately led to her declaring Chapter 7 bankruptcy. After her bankruptcy was discharged, she requested a copy of her credit report from Equifax.

22. Under the FCRA, consumers are entitled to obtain copies of their credit reports, including information about any businesses that have requested that consumer's report. Upon reviewing her report, Ms. Zellerino saw that a consumer report containing her personal information had been obtained by "Amored [sic] Investment Group," with the address listed as "9241 Irvine Blvd Armored Home Loans Irvine, CA 92618-1694.[2] The report did not disclose that Datamyx had also procured a copy of Ms. Zellerino's consumer report.

23. "Armored Home Loans" is registered fictitious business name for Armored.

24. Ms. Zellerino never requested credit or services from, or otherwise authorized her personal information to be accessed by Armored or any business operating under any of its assumed names. The letters "PRM" preceding Armored's name indicate that the inquiry was supposedly for promotional purposes meeting the requirements of 15 U.S.C. § 1681b(c)(1)(B)(i). Promotional inquiries are permissible under the FCRA only when the purchaser intends to make a "firm offer of credit or insurance" to consumers. 15 U.S.C. § 1681b(c)(1)(B)(i).

25. Given that Armored is not in the business of offering credit or insurance of any kind, it cannot make "firm offers of credit or insurance" and has no

---

[2] The misspelling "Amored" appears to be a typographical error for "Armored," and the fact that the address given matches Armored's address confirms that Armored was the requesting business.

legitimate need for obtaining consumers' credit information without their consent. Instead, Armored obtained this information illegally for direct marketing purposes.

**B. Armored operates a predatory debt settlement business and other direct marketing companies.**

26. Armored is in the "debt settlement" business. Debt settlement companies target consumers with financial difficulties and solicit them with promises to help free them from debt. In many cases, however, debt settlement companies require consumers to deposit money in a special savings account for 36 months or more before all the consumer's debts will be settled. During this time, debt settlement companies often ask or encourage consumers to stop sending payments directly to creditors, negatively impacting the consumer's credit rating, causing interest and fees to grow, and sometimes leading to collection actions against the consumer. Because creditors have no obligation to agree to negotiate a settlement of the amount owed, debt settlement companies may not be able to settle all of the consumer's debts, even if the consumer complies fully with the program and makes all of the required payments.

27. The debt settlement business is well-known for spawning scams that prey on vulnerable consumers. Because of the large number of scams and disreputable businesses in the debt settlement industry, the Federal Trade Commission ("FTC") advises consumers to check with their state Attorney General and local consumer protection agencies, as well as doing online research and getting extensive up-front information about the company's services and fees before doing business with any debt settlement company. *See* FTC, Settling Credit Card Debt, *available at* http://www.consumer.ftc.gov/articles/0145-settling-credit-card-debt.

28. Roosen and Shubash, through Armored and other entities they own and control, also operate or operated other direct marketing businesses (including

another debt-settlement business called LHDR, Inc.), a marijuana-themed merchandising business, a legal document preparation company, and a home-loan modification business that targeted consumers having difficulty making their mortgage payments. In 2012, the California Department of Real Estate revoked Armored's and Roosen's real estate licenses for charging illegal advance fees for home loan modification services. None of Roosen, Shubash, or Armored's businesses extends firm offers of credit or insurance to consumers or has a legitimate need or use for consumers' credit reports.

### C. Datamyx and Equifax failed to use reasonable procedures to ensure consumers' reports were sold only for Permissible Purposes.

29. Equifax, along with Experian and TransUnion, is one of the three largest CRAs in the United States. Equifax "organizes, assimilates and analyzes data on more than 600 million consumers and more than 80 million businesses worldwide."[3]

30. Datamyx describes itself as "the leading provider of risk-based, data-driven marketing solutions," which provides its customers "on-demand access to data" and touts its "nationwide database [that] includes targeted information on 220 million consumers" drawn from its "Tri-Bureau Credit Platform."[4] On information and belief, Datamyx sells this information to marketers, including debt-settlement companies like Armored, which Datamyx knows or should have known have no Permissible Purpose for the information.

31. In 2015, Ms. Zellerino discovered that Datamyx and Equifax operate under a sales agent agreement whereby Datamyx, acting as Equifax's agent, generates lists of consumer information provided by Equifax and then sells those

---

[3] http://www.equifax.com/about-equifax/company-profile.

[4] http://www.datamyx.com.

lists on Equifax's behalf. This agency relationship was not disclosed to third parties. Equifax conceals its relationship with Datamyx by deliberately failing to disclose to consumers that Datamyx has procured copies of their reports, in violation of 15 U.S.C. § 1681g.

32. The lists sold by Datamyx and Equifax are "consumer reports" as defined by the FCRA because they include information bearing on creditworthiness, including, in addition to basic contact information, debt loads and FICO scores. At its customers' request, Datamyx can screen the lists to provide information on, for example, only customers with financial difficulties, making them attractive targets for debt settlement companies' abusive marketing practices.

33. On information and belief, Datamyx does not follow reasonable procedures to ensure that the information it sells is used only for FCRA Permissible Purposes. Instead, Datamyx accepts as customers persons who falsely certify having a Permissible Purpose. Even a cursory investigation, however, would reveal that these persons intend to use the information for impermissible purposes, such as direct marketing solicitations for debt settlement.

34. In 2015, Ms. Zellerino also discovered that Datamyx, as Equifax's agent and/or as a reseller, sold such lists to Roosen and Shubash, acting on behalf of Armored, pursuant to a subscriber agreement. On information and belief, Roosen and Shubash falsely certified to Datamyx that they would use the reports for a Permissible Purpose. Roosen and Shubash, acting as Armored's principals and alter egos, obtained the list containing Ms. Zellerino's consumer report, along with the consumer reports of thousands of other people, for the illegal purpose of soliciting debt settlement business for Armored and/or for improper direct marketing on behalf of their other businesses.

35. Even the most cursory investigation would have shown that Roosen and Shubash had no Permissible Purpose, but rather were associated with a debt

settlement business, an industry notorious for misusing this kind of consumer credit information to take advantage of highly vulnerable consumers. Roosen, Shubash, and Armored are not authorized in California to conduct business as licensed consumer finance lenders or brokers, financial institutions, or insurance companies, or any other type of business that would indicate a Permissible Purpose for consumer reports, such as extending a "firm offer of credit or insurance."[5] Furthermore, minimal disclosure requirements would have revealed Roosen, Shubash, and Armored's association with the debt settlement business.

36. In addition, Equifax failed to use reasonable procedures to ensure that Datamyx's customers would not use the information for impermissible purposes. A simple precaution of requiring Datamyx to disclose its customer list would have revealed the names of Roosen, Shubash, and Armored, showing that Datamyx planned to resell the consumer reports to solicit debt settlement business, which is not a FCRA Permissible Purpose. Even if Datamyx's customer list had not been disclosed in advance, the indication in Equifax's database that Armored, a debt settlement company, had made supposedly "promotional" consumer report inquiries through Datamyx should have alerted Equifax that Datamyx was reselling Equifax's information for impermissible purposes.

37. As a direct and proximate cause, Ms. Zellerino has suffered an unwarranted invasion of her privacy, which may expose her to additional improper uses of the consumer report or her personal identification information.

38. Roosen, Shubash, and Armored have obtained thousands of reports from Datamyx and Equifax under these same false pretenses and illegally used these

---

[5] *See* California Department of Business Oversight website, Search for a Financial Services or Mortgage Lending Company Licensed in California, *available at* http://www.dbo.ca.gov/fsd/licensees/.

consumer reports to solicit business for their debt settlement operations from thousands of consumers.

### D. Equifax settled with the Federal Trade Commission after the agency asserted the same FCRA violations Ms. Zellerino brings here.

39. Equifax is no stranger to the allegations brought by Ms. Zellerino. On March 5, 2013, Equifax settled with the FTC and agreed to pay the agency $382,803.[6] As part of the settlement, Equifax is prohibited from "furnishing a prescreened list to any person [Equifax] does not have reason to believe has a permissible purpose under…15 U.S.C. § 1681b(c)" and "failing to maintain reasonable procedures designed to limit the furnishing of prescreened lists to the purposes listed under…15 U.S.C. § 1681b(c), as set forth in…15 U.S.C. § 1681e(a)."[7]

40. Jessica Rich, the FTC's Director of the Bureau of Consumer Protection, explained that the FTC brought the case against Equifax because it "sold prescreened lists of consumers who were late on their mortgage payments—which were consumer reports—to another company that then sold this information to companies that used it to pitch fraudulent debt relief services to consumers in financial distress."[8]

41. Equifax committed the exact same violations here that caused the FTC to scrutinize its business practices and, ultimately, collect the $382,803 payment.

---

[6] *See Equifax Information Servs.,* Docket No. C-4387 (Mar. 5, 2013) (F.T.C. order), available at https://www.ftc.gov/enforcement/cases-proceedings/102-3252/equifax-information-services-ll.

[7] *Id.*

[8] Public statement of Jessica Rich, available at https://www.ftc.gov/system/files/documents/public_statements/642271/may_11_2015_final_remarks.pdf.

**E.  The Defendants acted willfully.**

42. As a nationwide CRA, Equifax was well aware that it was subject to the mandates and requirements of the FCRA and knew or should have known about its legal obligations under the FCRA. These obligations are well-established in the plain language of the FCRA and in case law applying those provisions.

43. Equifax obtained or had available substantial written materials that apprised it of its duties under the FCRA. Any consumer reporting agency knows about or can easily discover these mandates.

44. Equifax cannot insulate itself from the requirements of the FCRA through its contractual agency relationship with Datamyx.

45. Despite at least the constructive knowledge of these legal obligations, Equifax acted consciously in breaching its known duties and depriving Ms. Zellerino and the Class members of their rights under the FCRA.

46. Equifax knew or should have known that the FCRA requires consumer reporting agencies such as Equifax to "maintain reasonable procedures designed to avoid violations of…[§ 1681b] of [the FCRA]" and to ensure those procedures "require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose" under 15 U.S.C. § 1681e(a).

47. Equifax knew or should have known that it was required, under 15 U.S.C. § 1681e(a), (1) to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report," and (2) not to furnish a consumer report to any person if it had "reasonable grounds for believing that the consumer report will not be used" for a Permissible Purpose.

48. Equifax also knew or should have known that it was required, under 15 U.S.C. § 1681g, to disclose the identity of all persons who had procured a

consumer report for any purpose within the year preceding the consumer's request, including agents and/or resellers like Datamyx.

49. Equifax should have easily discovered, with minimal time and effort, that Roosen, Shubash, and Armored were not using the consumer reports that Equifax generated and sold through Datamyx for any FCRA Permissible Purpose.

50. Equifax acted willfully in concealing from consumers that it had delivered consumer reports to resellers like Datamyx for resale, rather than identifying those resellers in enquiry logs which the FCRA requires that Equifax prepare and deliver to consumers who request copies of their consumer credit file under 15 U.S.C. § 1681g(a)(3).

51. Datamyx also acted willfully. It had a duty as an undisclosed agent under § 1681e(a) and/or as a reseller under § 1681e(e), to ensure that consumer reports were not used for impermissible purposes and/or to disclose to Equifax both the identity of the end users of the reports or information (including Roosen, Shubsash, and Armored) and the supposed Permissible Purposes for which the reports would be used. Datamyx, through the exercise of reasonable procedures including minimal diligence on its customers, should have discovered that Roosen, Shubash, and Armored had no Permissible Purpose for consumer reports.

52. Roosen, Shubash, and Armored also acted willfully by intentionally making false representations to Datamyx and Equifax regarding their purpose in purchasing consumer reports.

53. As a result of these FCRA violations, Defendants are liable to Plaintiff and similarly situated individuals for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), as well as attorneys' fees and costs pursuant to Sections 1681n and 1681o.

# V.  CLASS ALLEGATIONS

54. Ms. Zellerino brings this action on behalf of herself and a Class of persons similarly situated under Rule 23, for the following "Armored Class":

> All natural persons within the United States (including all territories and other political subdivisions of the United States) who are identified in Equifax's records as having been the subject of consumer reports obtained by Salem Shubash, Andrew Roosen, Armored, or their affiliates within five years preceding the filing of this Complaint.

Excluded from the class definition are any employees, officers, or directors of any of the Defendants, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

55. In addition, Ms. Zellerino brings this action on behalf of herself and a Class of persons similarly situated under Rule 23, for the following "Datamyx Class":

> All natural persons within the United States (including all territories and other political subdivisions of the United States) who are identified as having been the subject of consumer reports furnished by Equifax and whose reports (1) were sold by Datamyx or its affiliates or agents, (2) contained the notation "PRM" or were otherwise intended for promotional purposes, (3) were sold to end users for which (i) Datamyx and Equifax had no reasonable grounds for believing the end users would use the reports for a permissible purpose or (ii) Datamyx and Equifax would have discovered, through the establishment and implementation of reasonable procedures, the end users did not intend to use to extend a firm offer of credit or insurance, (4) within five years preceding the filing of this Complaint.

1  Excluded from the class definition are any employees, officers, or directors of any
2  of the Defendants, any attorneys appearing in this case, and any judges assigned to
3  hear this case as well as their immediate family and staff.

4     56. Ms. Zellerino also brings this action on behalf of herself and a Class of
5  persons similarly situated under Rule 23, for the following "Equifax Class:"

6       All natural persons within the United States (including all territories
7       and other political subdivisions of the United States) who (1)
8       requested a copy of their consumer file disclosure information from
9       Equifax within five years preceding the filing of this Complaint, and
10      (2) whose credit file had been accessed within the preceding year by a
11      reseller of consumer reports, and (3) whose consumer disclosures did
12      not identify the reseller that had accessed the consumer's report.

13 Excluded from the class definition are any employees, officers, or directors of any
14 of the Defendants, any attorneys appearing in this case, and any judges assigned to
15 hear this case as well as their immediate family and staff.

16    57. **Numerosity**. The Class members are so numerous that joinder of all is
17 impractical under Fed. R. Civ. P. 23(a)(1). Equifax and Datamyx sold, and
18 Shubash, Roosen, and Armored accessed and used, the consumer reports of
19 thousands of individuals, and it would not be practical for all of these injured
20 parties to bring suit individually. Class members may be notified of this action by
21 first-class mail, supplemented, if the Court deems advisable, by published notice.

22    58. **Existence and Predominance of Common Questions**. Common
23 questions of law and fact exist as to all Class members and predominate over any
24 individual questions under Fed. R. Civ. P. 23(a)(2) and 23(b)(3). These common
25 questions include whether:

26         a. Roosen, Shubash, and Armored had a Permissible Purpose for
27            consumer reports (as to the Armored Class);

28 Case No. 16-cv-485           – 15 –

b. Roosen, Shubash, and Armored falsely certified a Permissible Purpose in accessing and using Class members' consumer reports (as to the Armored Class);

c. Equifax did not have reasonable grounds for believing end users of consumer reports it furnished for promotional purposes would use those reports to extend a firm offer of credit or insurance (as to the Armored Class and Datamyx Class);

d. Equifax should have discovered, through the establishment and implementation of reasonable procedures, that end users of consumer reports it furnished for promotional purposes did not intend to use those reports to extend a firm offer of credit or insurance (as to the Armored Class and Datamyx Class);

e. Datamyx should have discovered through reasonable procedures that Roosen, Shubash, and Armored had no FCRA Permissible Purpose (as to the Armored Class and Datamyx Class);

f. Datamyx acted as Equifax's agent in selling consumer reports (as to the Armored Class and Datamyx Class);

g. Equifax implemented and maintained reasonable procedures to limit the provision of Class members' consumer reports to purchasers with a Permissible Purpose (as to the Armored Class and Datamyx Class);

h. Equifax failed to disclose to consumers requesting their reports the identity of each person who procured that report as Equifax's agent and/or for resale during the one-year period preceding the request (as to the Equifax Class); and

i. the Defendants' conduct was willful (as to all Classes).

59. **Typicality**. Ms. Zellerino's claims are typical of the claims of the Class members under Fed. R. Civ. P. 23(a)(3) because all Armored and Datamyx Class members, like Ms. Zellerino, had their personal information unlawfully accessed without any FCRA Permissible Purpose. All Equifax Class members, like Ms. Zellerino, had their right to know the identities of persons who had procured copies of their consumer reports violated. Ms. Zellerino has suffered similar injuries to those of the members of the Classes she seeks to represent. Ms. Zellerino bases her claims, and those on behalf of the Classes, upon the same legal and remedial theories and is entitled to relief under the same causes of action and upon the same facts as other Class members.

60. **Adequacy**. Ms. Zellerino is an adequate Class representative under FED. R. CIV. P. 23(a)(4) because she will fairly and adequately protect the interests of all Class members in the prosecution of this action and in the administration of all matters relating to the claims in this case. Ms. Zellerino has retained counsel experienced in handling FCRA class action suits. Neither Ms. Zellerino nor her counsel have any interest which might cause them not to vigorously pursue this action.

61. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under FED. R. CIV. P. 23(b)(3) because liability will be determined based on common facts and legal theories, and the damages sought are such that individual prosecution would prove burdensome and expensive for the litigants and the courts. Because of the complex and extensive litigation necessitated by Defendants' conduct, it would be virtually impossible for the Class members individually to effectively redress the wrongs done to them. In addition, individual litigation would present a potential for inconsistent or contradictory judgments and increase the delay and expense to the parties and the court system. By contrast, the class action procedure will result in

substantial benefits to the parties and the Court by allowing the Court to resolve numerous individual claims based on a single set of proof.

62. **Injunctive Relief**. Class certification is also appropriate under FED. R. CIV. P. 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, making equitable or declaratory relief appropriate.

## CAUSES OF ACTION

### COUNT I – VIOLATIONS OF 15 U.S.C. §§ 1681b, 1681e(a)

*As to Defendants Equifax and Datamyx on behalf of*
*the Armored Class and the Datamyx Class*

63. Ms. Zellerino incorporates by reference all preceding paragraphs as though fully stated here.

64. Equifax, through its undisclosed agent Datamyx, sold the consumer reports of Ms. Zellerino and the other Class members to Roosen, Shubash, and Armored in violation of the FCRA, 15 U.S.C. §§ 1681b(a) and 1681e(a).

65. Equifax and Datamyx knew or should have known that the prospective use of reports by Roosen, Shubash, and Armored was not for a Permissible Purpose under § 1681b. As described above, even the most cursory investigation would have revealed this, and Equifax and Datamyx thus had reasonable grounds for believing the consumer reports would not be used for a Permissible Purpose under § 1681b.

66. Equifax and Datamyx failed to implement and maintain reasonable procedures to limit the provision of the consumer reports of Ms. Zellerino and the Class members to a section 1681b Permissible Purpose.

67. On information and belief, Roosen, Shubash, and Armored were "new prospective users" of consumer reports. Equifax failed to make a reasonable effort to verify their identities and the uses certified by them prior to furnishing the consumer reports of Ms. Zellerino and the Class members.

68. Equifax sold the consumer reports to Datamyx, who it knew or in the exercise of reasonable diligence should have known, would resell the reports for purposes not permitted by the FCRA.

69. Equifax and Datamyx willfully and recklessly disregarded their duties under 15 U.S.C. §§ 1681b and 1681e(a) to prevent misappropriation and misuse of the private and protected credit information of Ms. Zellerino and the Class members. Equifax's sale of the lists described herein carried an unjustifiably high risk of harm that was either known or so obvious that it should have been known. Even a minimal level of diligence would have discovered that the lists were not being used for a Permissible Purpose.

70. Equifax's and Datamyx's failures resulted in the unlawful use of Class members' credit information to target consumers for debt settlement marketing solicitations or other impermissible marketing purposes.

71. Equifax and Datamyx are liable to Ms. Zellerino and the Class for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT II – VIOLATIONS OF 15 U.S.C. § 1681e(e)

*As to Defendant Datamyx – on behalf of the Armored Class and the Datamyx Class*

72. Ms. Zellerino incorporates by reference all preceding paragraphs as though fully stated here.

73. Datamyx is liable as a "person who procures a consumer report for purposes of reselling the report or any information in the report" under 15 U.S.C. § 1681e(e).

74. Datamyx procured the consumer reports of Ms. Zellerino and the other Class members from Equifax for the purpose of reselling those reports and information in them and did resell those reports and information in them to Roosen, Shubsash, and Armored.

75. On information and belief, Datamyx did not disclose to Equifax either the identity of the end users of the reports or information (Roosen, Shubsash, and Armored), or a Permissible Purposes for using the reports under § 1681b. No Permissible Purpose could be disclosed because none existed.

76. As a person who procures consumer reports for purposes of reselling the reports or information in them, Datamyx had an obligation to establish and comply with reasonable procedures designed to ensure that the reports and information were resold for a Permissible Purpose under § 1681b. Datamyx did not do so.

77. Even a cursory investigation would have revealed that Roosen, Shubsash, and Armored did not have a Permissible Purpose for obtaining Ms. Zellerino's and the Class members' consumer reports.

78. Datamyx willfully and recklessly disregarded its duties under 15 U.S.C. § 1681e(e) to prevent misappropriation and misuse of the private and protected credit information of Ms. Zellerino and the Class members.

79. Datamyx's failures resulted in the unlawful use of consumers' credit information to target them for debt settlement marketing solicitations or other impermissible purposes.

80. Datamyx is liable to Plaintiffs and the Class for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT III – VIOLATIONS OF 15 U.S.C. § 1681g

*As to Defendant Equifax, on behalf of the Equifax Class*

81. Ms. Zellerino incorporates the preceding allegations by reference.

82. Under 15 U.S.C. § 1681(g)(3)(ii), Equifax is required, upon request by a consumer, to "clearly and accurately disclose to the consumer…[i]dentification of each person…that procured a consumer report…for any other purpose [other than employment] during the 1-year period preceding the date on which the request is made."

83. Datamyx procured Ms. Zellerino's report from Equifax acting as Equifax's agent and/or as a reseller.

84. Ms. Zellerino requested her report from Equifax within one year of Datamyx's procuring the report, but Equifax failed to disclose the identification of Datamyx.

85. Equifax willfully and recklessly disregarded its duties under 15 U.S.C. § 1681g, deliberately concealing its relationship with Datamyx and similar agents and/or resellers from Ms. Zellerino and the Class members.

86. Equifax is liable to Ms. Zellerino and the Class members for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT IV – VIOLATIONS OF 15 U.S.C. § 1681b(f)

*As to Defendants Roosen, Shubash, and Armored, on behalf of the Armored Class*

87. Ms. Zellerino incorporates the preceding allegations by reference.

88. Roosen, Shubash, and Armored entered into a subscriber agreement whereby they purchased from Datamyx consumer reports containing the personal information of Ms. Zellerino and the other Class members.

89. 15 U.S.C. § 1681b(f) prohibits persons from using or obtaining consumer reports in the absence of a Permissible Purpose.

90. The only Permissible Purpose for using consumer reports like those obtained by Roosen, Shubash, and Armored regarding consumers with whom they have no business relationship is to make a "firm offer of credit or insurance." A "firm offer" is one that will be honored (subject to certain exceptions) if the consumer continues to meet the pre-selected criteria used to select them for the offer. 15 U.S.C. § 1681a(l). Roosen, Shubash, and Armored are not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

91. Roosen, Shubash, and Armored willfully and recklessly disregarded their duties under 15 U.S.C. § 1681b(f) to obtain a consumer report only for a Permissible Purpose.

92. Roosen's, Shubash's, and Armored's failures resulted in the unlawful use of consumers' credit information to target them for debt relief services or other impermissible purposes.

93. Roosen and Shubash are liable to Ms. Zellerino and the Class members for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT V – VIOLATIONS OF 15 U.S.C. § 1681q

*As to Defendants Roosen, Shubash, and Armored, on behalf of the Armored Class*

94. Ms. Zellerino incorporates the preceding allegations by reference.

95. Roosen, Shubash, and Armored accessed and used the consumer reports of Ms. Zellerino and the Class members under false pretenses in violation of 15 U.S.C. § 1681q and 15 U.S.C. § 1681n.

96. Ms. Zellerino and the Class members were injured by this invasion of their privacy and suffered damages as a result.

## VI. PRAYER

Ms. Zellerino, on her own behalf and on behalf of the Class, prays for relief against Defendants including:

(a)  an order certifying the Classes under FED. R. CIV. P. 23 and appointing Ms. Zellerino and her counsel to represent the Classes;

(b)  statutory damages under 15 U.S.C. § 1681n;

(c)  punitive damages;

(d)  pre-judgment interest from the date of filing of this lawsuit;

(e)  reasonable attorneys' fees;

(f)  costs of this proceeding;

1    (g) equitable or declaratory relief; and

2    (h) all other relief to which Ms. Zellerino and the Class members may

3         be justly entitled.

4                          VII. JURY DEMAND

5    Ms. Zellerino demands a trial by jury.

6

7    Dated: March 15, 2016              Respectfully submitted,

8                              By: */s/ Michael A. Caddell*
                                    Michael A. Caddell (SBN 249469)
9                                   mac@caddellchapman.com
                                    Cynthia B. Chapman (SBN 164471)
10                                  cbc@caddellchapman.com
                                    Amy E. Tabor (SBN 297660)
11                                  aet@caddellchapman.com
                                    CADDELL & CHAPMAN
12                                  1331 Lamar, Suite 1070
                                    Houston, TX 77010-3027
13                                  Tel.: (713) 751-0400
                                    Fax: (713) 751-0906
14

15

16                                  */s/ Ian B. Lyngklip*
                                    Ian B. Lyngklip (*pro hac vice forthcoming*)
17                                  ian@michiganconsumerlaw.com
                                    LYNGKLIP & ASSOCIATES CONSUMER
18                                  LAW CENTER, PLC
                                    24500 Northwestern Highway, Ste. 206
19                                  Southfield, MI 48075
                                    Tel.: (248) 208-8864
20                                  Fax: (248) 208-9073

21
                                    *Attorneys for Plaintiff Janice Zellerino*
22

23

24

25

26

27

28
     CASE NO. 16-CV-485              – 23 –

     ─────────────────────────────────────────────
                    CLASS ACTION COMPLAINT