Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
Benjamin C. Wickert (*pro hac vice*)
bcw@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston TX 77007-1722
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiff*

[additional counsel listed on signature page]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JANICE ZELLERINO, *individually and on behalf of others similarly situated,*<br><br>    *Plaintiff,*<br><br>    *v.*<br><br>ANDREW ROOSEN, SALEM SHUBASH, ARMORED INVESTMENT GROUP, INC., DATAMYX LLC, *and* EQUIFAX INFORMATION SERVICES, LLC,<br><br>    *Defendants.* | CASE NO. 16-CV-00485-JLS-AJW<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANTS ROOSEN, SHUBASH, AND ARMORED**<br><br>Date:   August 5, 2016<br>Time:  2:30 p.m.<br>Ctrm:  10A<br>Judge: Josephine L. Staton |

# TABLE OF CONTENTS

I.    Introduction ................................................................................1

II.   Case Background .......................................................... 2

III.  Standard of Review ....................................... 3

IV.  Argument and Authorities .................................. 3

    A.    The Armored Defendants have not met their burden to prove that a reasonably diligent plaintiff would have discovered her claims more than two years before the filing of Ms. Zellerino's Complaint. ................................................................. 3

        1.    Discovery of the facts constituting Ms. Zellerino's alleged FCRA violation requires more than notice of an inquiry. .......... 4

        2.    Ms. Zellerino did not have knowledge of the facts constituting the violation by virtue of receiving her Equifax consumer disclosure. ....................................... 6

    B.    Ms. Zellerino has adequately alleged that Mr. Roosen and Mr. Shubash personally participated in Armored's activities to warrant personal liability under the FCRA. ....................................... 10

    C.    Attorney's fees are plainly not warranted. ........................................15

V.    Conclusion ................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Andrews v. Equifax Info. Servs. LLC,*
    700 F. Supp. 2d 1276 (W.D. Wash. 2010) .................................................9, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 3

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ................................................................. 11–12

*Drew v. Equifax Info. Servs. LLC,*
    690 F.3d 1100 (9th Cir. 2012) ............................................................*passim*

*Edge v. Prof'l Claims Bureau, Inc.*,
    64 F. Supp. 2d 115 (E.D.N.Y. 1999) ..............................................................17

*Hansen v. Morgan*,
    582 F.2d 1214 (9th Cir. 1978) ........................................................................11

*Heath v. Credit Bureau of Sheridan*,
    618 F.2d 693 (10th Cir. 1980) .......................................................................11

*Henry A. v. Willden*,
    678 F.3d 991 (9th Cir. 2012) ......................................................................... 3

*Ippolito v. WNS, Inc.*,
    864 F.2d 440 (7th Cir. 1988) ........................................................................11

*Leek v. Cooper*,
    194 Cal. App. 4th 399 (2011) .......................................................................13

*Lincoln Imp. Ltd., Inc. v. Weaver Flower Co.*,
    No. 11-cv-1098, 2012 WL 1048531 (C.D. Cal. March 27, 2012) ........12–13, 15

*Mesler v. Bragg Mgmt. Co.*,
    39 Cal. 3d 290 (1985) ................................................................ 12

*Mone v. Dranow*,
    945 F.2d 306 (9th Cir. 1991) .....................................................11

*Pacific Bell Tel. Co. v. 88 Connection Corporation*,
    No. 15-cv-04554, 2016 WL 3257656 (N.D. Cal. June 14, 2016) .........12–13, 15

*Peel v. BrooksAmerica Mortg. Corp.*,
    788 F. Supp. 2d 1149 (C.D. Cal. 2011) ........................................... 6

*Phillips v. Grendahl*,
    312 F.3d 357 (8th Cir. 2002) ..................................................... 5

*River Oaks Homeowners Prot. Comm., Inc.*,
    32 Fed. App'x 929 (9th Cir. 2002) ............................................. 16

*Ryan v. Trans Union Corp.*,
    No. 99-cv-0216, 2001 WL 185182 (N.D. Ill. Feb. 26, 2001).................... 16–17

*Shelton v. NCO Fin. Sys. Inc.*,
    No. 3:13–CV–903, 2013 WL 2239132 (N.D. Ohio May 21, 2013) ................. 6

*Sheridan v AFNI, Inc*,
    No. 3:14-CV-01251, 2015 WL 506573 (M.D. Tenn. February 5, 2015).......... 6

*Strategic Diversity, Inc. v. Alchemix Corp.*,
    666 F.3d 1197 (9th Cir. 2012)................................................3, 7, 9

*Supermail Cargo, Inc. v. U.S.*,
    68 F.3d 1204 (9th Cir. 1995) .................................................. 3–4

*Vasquez-Estrada v. Collecto, Inc.*,
    No. 14-cv-01422, 2015 WL 6163971 (D. Or. Oct. 20, 2015) ...................... 8–9

*Yohay v. City of Alexandria Employees Credit Union*,
    827 F.2d 967 (4th Cir. 1987) ...................................................11

*Zellerino v. Roosen*,
   118 F. Supp. 3d 946 (E.D. Mich. 2015) ..................................................... 2, 12

**STATUTES**

15 U.S.C. § 1681 ................................................................................................*passim*

# I. Introduction

The Court should deny Defendants Andrew Roosen, Salem Shubash, and Armored Investment Group, Inc.'s ("Armored") (together, the "Armored Defendants") motion to dismiss Ms. Zellerino's complaint.

First, the Court should deny the Armored Defendants' limitations motion, because they have not met their burden to show that Ms. Zellerino discovered her claims more than 2 years before her Complaint was filed on March 15, 2016. The Armored Defendants argue that merely because Ms. Zellerino knew as of January 1, 2013 that the Armored Defendants had accessed her consumer report, she had already discovered her claims. The Ninth Circuit, however, has held that the FCRA's statute of limitations does not begin to run until a plaintiff has notice of all facts constituting an FCRA violation. *Drew v. Equifax Info. Servs. LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012). Here, simply possessing a report showing that Armored had made a "promotional" inquiry for her private credit information did not give Ms. Zellerino any information about the Armored Defendants' impermissible purpose for ordering her report, nor did it disclose the Armored Defendants' scheme to misuse consumer reports to market debt settlement services. As such, delivery of the Equifax disclosure report to Ms. Zellerino did not trigger the discovery rule under the FCRA's statute of limitations. *Drew*, 690 F.3d at 1110.

Second, the Court should deny the Armored Defendants' motion to dismiss Ms. Zellerino's claims against Messrs. Roosen and Shubash personally. (Dkt. 56 at 10.) Contrary to their contention that Ms. Zellerino fails to allege their personal involvement in wrongdoing, the Complaint plainly alleges that Mr. Roosen and Mr. Shubash personally participated in the alleged illegal activity. (Dkt. 55 ¶¶ 42, 45.) In addition, Ms. Zellerino has pled that they acted at all times as Armored's agents and alter egos. (Dkt. 55 ¶¶ 7–8.) As a Michigan district court already found in Ms. Zellerino's prior case against the Armored Defendants, this is more than

1    sufficient to state a claim against Mr. Roosen and Mr. Shubash. *See Zellerino v.*
2    *Roosen*, 118 F. Supp. 3d 946, 949 (E.D. Mich. 2015) ("*Zellerino I*") (holding that "the
3    plaintiff has stated plausible claims against the defendants in their personal
4    capacities").

5           Finally, an award of fees is plainly not warranted because the Armored
6    Defendants should not succeed on their motion, and Ms. Zellerino has brought her
7    claims in good faith.

## II. Case Background

9           Ms. Zellerino asserts two claims against the Armored Defendants under the
10   Fair Credit Reporting Act ("FCRA"). First, she alleges that the Armored
11   Defendants obtained her consumer report without a Permissible Purpose in violation
12   of 15 U.S.C. § 1681b(f). (Dkt. 55 ¶¶ 98–104.) Second, she alleges that the Armored
13   Defendants accessed her consumer report under false pretenses in violation of
14   Section 1681q. (*Id.* ¶¶ 105–107.)

15          Ms. Zellerino originally filed her claims against the Armored Defendants in
16   Michigan district court on June 27, 2014. *See Zellerino I*, 188 F. Supp. at 946. The
17   Michigan district court found that "the plaintiff has stated plausible claims against
18   the defendants in their personal capacities." *Zellerino I*, 118 F. Supp. 3d at 949. The
19   *Zellerino I* court nevertheless dismissed that suit for lack of personal jurisdiction,
20   finding that "the defendants' conduct of accessing the plaintiff's credit report,
21   which presumably took place in California, cannot furnish a basis for them to be sued
22   in a Michigan court." *Id.* Ms. Zellerino then refiled her claims in this court, also
23   adding as Defendants Equifax Information Services, LLC ("Equifax") and Datamyx
24   LLC ("Datamyx"), from whom the Armored Defendants purchased Ms. Zellerino's
25   and the Class members' reports. (Dkt. 55 ¶¶ 35–48.) The Armored Defendants have
26   now moved to dismiss again, reasserting their failed argument that Mr. Roosen and

Plaintiff's Response in Opposition to Motion to Dismiss by Defendants
Roosen, Shubash, and Armored

1  Mr. Shubash cannot be held liable in their personal capacity and also arguing that
2  Ms. Zellerino's claims are barred by the statute of limitations.

3  ### III. STANDARD OF REVIEW

4      To survive a motion to dismiss, the complaint must allege "enough facts to
5  state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
6  U.S. 544, 570 (2007). In reviewing the Complaint, the Court must "accept as true
7  all well pleaded facts in the complaint and construe them in the light most favorable
8  to the nonmoving party." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012).

9      Specifically, in the limitations context, "a complaint cannot be dismissed
10  unless it appears beyond doubt that the plaintiff can prove no set of facts that would
11  establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204,
12  1207 (9th Cir. 1995). Under the FCRA's discovery rule "the ultimate burden is on
13  the defendant to demonstrate that a reasonably diligent plaintiff would have
14  *discovered* the facts constituting the violation …. [The defendant must] demonstrate
15  how a reasonably diligent plaintiff … would have discovered the violations." *Drew*,
16  690 F.3d at 1110 (emphasis in original) (citing *Strategic Diversity, Inc. v. Alchemix*
17  *Corp.,* 666 F.3d 1197, 1206 (9th Cir.2012)).

18  ### IV. ARGUMENT AND AUTHORITIES

19  **A. The Armored Defendants have not met their burden to prove that a**
20  **reasonably diligent plaintiff would have discovered her claims more than two**
   **years before the filing of Ms. Zellerino's Complaint.**

21      The FCRA's statute of limitations explicitly incorporates the "discovery
22  rule," requiring suit to be filed no later than "2 years after the date of **discovery** by
23  the plaintiff of the violation that is the basis for such liability." 15 U.S.C. § 1681p.
24  The Ninth Circuit has held specifically in the FCRA context that it is the defendant's
25  burden to prove that "a reasonably diligent plaintiff would have *discovered* the facts

26

27

28

constituting the violation" more than 2 years before suit was filed. *Drew*, 690 F.3d at 1110 (emphasis in original).

This is a difficult burden to meet even on summary judgment, with the benefit of a factual record. *See Drew*, 690 F.3d at 1111 (holding that defendant failed to meet its burden to show, on a summary judgment motion, that plaintiff should have discovered his claims more than two years before the case was filed). On a motion to dismiss, defendant's burden is even higher: the court must assume the truth of all pleaded facts and dismiss only if it "appears beyond doubt" that there is "no set of facts that would establish the timeliness of the claim." *Supermail Cargo*, 68 F.3d at 1207. Because mere receipt of her consumer report did not put Ms. Zellerino on notice of her claims against them, the Armored Defendants have not met this heavy burden here.

### 1. Discovery of the facts constituting Ms. Zellerino's alleged FCRA violation requires more than notice of an inquiry.

Ms. Zellerino alleges that Mr. Roosen and Mr. Shubash accessed and used Ms. Zellerino's consumer report, and the consumer reports of thousands of others, without a Permissible Purpose. (Dkt. 55 ¶¶ 98–104). Additionally, she alleges that they have accessed and used those reports under false pretenses. (Dkt. 55 ¶¶ 105–107). The Armored Defendants claim that Ms. Zellerino knew of these claims as of January 1, 2013, the date on which she received a disclosure of her Equifax consumer file. But in order to discover the "facts constituting the violation," *Drew*, 690 F.3d at 1100, Ms. Zellerino had to know more than merely that an inquiry had been made.

The FCRA identifies several categories of "Permissible Purposes" for which a consumer reporting agency may furnish a consumer report. 15 U.S.C. § 1681b. These Permissible Purposes fall into three broad categories.

- Use in conjunction with transactions initiated by the consumer under § 1681b(a),
- Use in conjunction with employment under § 1681b, and
- Use in conjunction with transactions for credit and insurance **not** initiated by the consumer. § 1681b(c).

The FCRA clearly prohibits the access or use of a consumer report by a user unless the consumer report is accessed or used for one of those Permissible Purposes and the purpose is certified as such. The statute itself bars the use of a consumer report for an impermissible purpose:

(f) Certain use or obtaining of information prohibited

A person shall not use or obtain a consumer report for any purpose unless–

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). Under the plain language of this statute, a person who obtains and/or uses a consumer report without a Permissible Purpose violates the act. *See generally*, *Phillips v. Grendahl,* 312 F.3d 357, 363–366 (8th Cir. 2002).

As to the claim under § 1681q of the FCRA, the Act bars any individual from acting under false pretenses to obtain a consumer report.

Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both.

15 U.S.C. § 1681q. In order to properly allege this claim, the plaintiff must allege that the defendant:

(1)    knowingly and willfully obtain a consumer report for a purpose that is not sanctioned by the FCRA; and

(2)    failed to disclose his true motivation to the consumer reporting agency.

*Sheridan v AFNI, Inc*, No. 3:14-CV-01251, 2015 WL 506573, at *5 (M.D. Tenn. February 5, 2015); *Shelton v. NCO Fin. Sys. Inc.*, No. 3:13–CV–903, 2013 WL 2239132, at *3 (N.D. Ohio May 21, 2013) (citation omitted). Thus, in order to meet their burden to prove that Ms. Zellerino should have discovered the facts constituting the alleged FCRA violations, The Armored Defendants must show that Ms. Zellerino knew or should have known not just that they accessed her consumer report, but that they did so without a Permissible Purpose and under false pretenses.

### 2. Ms. Zellerino did not have knowledge of the facts constituting the violation by virtue of receiving her Equifax consumer disclosure.

When Ms. Zellerino received her consumer report listing, under "promotional inquiries," "Amored [sic] Investment Group," she had no way of knowing who "Amored [sic] Investment Group" was, much less whether it had a Permissible Purpose for requesting her private credit information.[1] In addition, the

---

[1] The Armored Defendants ask the Court to take judicial notice of the fact that Ms. Zellerino received this report on January 1, 2013. (Dkt. 58.) "[A] court may take judicial notice of the existence of another court's opinion or the filing of pleadings in related proceeding; the court may not, however, accept as true the facts found or alleged in such documents." *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011). Judicial notice of the facts alleged in Ms. Zellerino's prior case against Armored is thus improper at this stage. Regardless, the date when Ms. Zellerino received her consumer report is not the relevant date for limitations purposes, because mere notation that "Amored [sic]" had made a promotional inquiry did not constitute discovery of the facts showing that the Armored Defendants had requested Ms. Zellerino's report under false pretenses without a Permissible Purpose in violation of the FCRA, as shown above.

report itself included the letters "PRM," supposedly indicating that "Amored" (which she later discovered was actually "Armored") Investment Group's "inquiry was supposedly for promotional purposes meeting the requirements of 15 U.S.C. § 1681b(c)(1)(B)(i)." (Dkt. 55 ¶ 28.) Of course Ms. Zellerino had to perform an investigation to discover that this representation was untrue. *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012) (holding that "the 'discovery' of facts that put a plaintiff on 'inquiry notice' does not automatically begin the running of the limitations period.") In addition, as pled in Ms. Zellerino's Complaint, "Armored operated under a number of assumed d/b/a names, creating public confusion regarding Armored's identity." (Dkt. 55 ¶ 8.) And "Roosen and Shubash used these multiple entities to conceal their improper use of consumer reports, effectively using one entity to obtain the reports and another to deliver improper marketing materials." (*Id.*) The confusion created by these multiple entities further complicated Ms. Zellerino's investigation. Ms. Zellerino completed her investigation and filed her Complaint against the Armored Defendants in Michigan on June 27, 2014, less than two years before the filing of her Complaint in this case on March 15, 2016. (Dkt. 1.) Armored has not met its burden show that Ms. Zellerino should have discovered her claims sooner.

*Drew* illustrates the difficulty of proving when an FCRA plaintiff should have discovered his or her claims, even with the benefit of a summary judgment record, as existed in *Drew*. *Drew*, 690 F.3d at 1105 (noting that the case was at the summary judgment stage). *Drew* concerned a plaintiff who had disputed inaccurate information that appeared on his credit report following an identity theft. *Id.* The defendant moved for summary judgment, arguing that the plaintiff should have been on notice of his claims as soon as he discovered that inaccurate information was being

reported about him. *Id.* at 1110. The district court granted summary judgment on limitations grounds, and the Ninth Circuit Court of Appeals reversed. *Id.* at 1111.

As the Ninth Circuit explained in *Drew*, a plaintiff has not discovered a claim until he or she has discovered **all** of the facts that make up the alleged FCRA violation. *Drew*, 690 F.3d at 1110 (holding that defendant "must show that Drew knew before June 2004 that [defendant] had failed to comply with its duties under the FCRA, in particular, its duty to investigate"). Mr. Drew brought a claim against a credit card issuer that had reported inaccurate information about him. *Drew*, 690 F. Supp. 3d at 1110. As the Ninth Circuit pointed out, reporting such inaccurate information is not *per se* illegal under the FCRA. *Id.* Rather, the furnisher has a duty only to conduct a "reasonable investigation" of the plaintiff's dispute. *Id.* at 1110 (explaining that "an FCRA violation is tied to the reasonableness of an investigation rather than the accuracy of its results"). Simply knowing that the defendant had made an inaccurate report about him gave Mr. Drew no way of knowing whether the defendant had conducted any investigation at all, much less whether such investigation was "reasonable." *Id.* The Ninth Circuit therefore reversed the district court, holding that resolving the limitations defense as a matter of law was improper, even at the summary judgment stage, because "material issues of fact remain as to 'whether plaintiffs knew or had reason to know of the specific' violation." *Id.* at 1110.

Another district court in the Ninth Circuit recently followed *Drew* in rejecting a similar limitations argument in an FCRA case. *Vasquez-Estrada v. Collecto, Inc.*, 14-cv-01422, 2015 WL 6163971, at *1 (D. Or. Oct. 20, 2015). Like *Drew*, *Vasquez-Estrada* was at the summary judgment stage. *Id.* at *4 (denying motion for summary judgment). In *Vasquez-Estrada,* the plaintiff's FCRA claims arose out of an allegedly mistakenly reported debt. *Id.* at *3. Like the Armored Defendants here, the defendant in *Vasquez-Estrada* argued that the statute of limitations began to run as

soon as the plaintiff received a document merely mentioning the defendant—in *Vasquez-Estrada*, a letter attempting to collect the debt. *Id.* at *3. The court rejected that argument, explaining that, under the Ninth Circuit's rule announced in *Drew*, limitations did not begin to run until the plaintiff had notice of **all** facts constituting the defendant's FCRA violation. *Vasquez-Estrada*, 2015 WL 6163971, at *3 (holding that receipt of collection letter "is simply not evidence of constructive discovery under *Drew*"). Mindful of the defendant's "ultimate burden … to demonstrate that a reasonably diligent plaintiff would have discovered the facts constituting the violation,"[2] the *Vasquez-Estrada* court denied summary judgment, reasoning that "Defendant fails to explain how the letter from Enhanced Recovery would have led plaintiff to discover the facts constituting defendant's failure to conduct a reasonable investigation upon receipt of the 2011 ACDVs." *Id.*; *see also Andrews v. Equifax Info. Servs. LLC*, 700 F. Supp. 2d 1276, 1278 (W.D. Wash. 2010) (holding that mere receipt of report with inaccurate credit information did not constitute discovery of FCRA claim where "[t]here are a dozen plausible reasons that a credit report may contain inaccurate information which would not be unlawful under the FCRA").

Similarly here, the FCRA allows promotional inquiries to be made for consumer reports. 15 U.S.C. § 1681a(l). Such inquiries are legal so long as the requester intends to extend a "firm offer of credit or insurance" to the persons meeting the specified criteria. *Id.* Simply learning that a promotional inquiry was made thus in no sense constitutes discovery of an FCRA "violation." 15 U.S.C. § 1681p (limitations does not begin to run until discovery of "the violation that is the basis for such liability"); *see Andrews*, 700 F. Supp. 2d at 1278 (denying limitations motion where receipt of credit report with inaccurate information did not put

---

[2] *Vasquez-Estrada,* 2015 WL 6163971, at *3 (quoting *Strategic Diversity, Inc.*, 666 F.3d at 1206.)

plaintiff on notice of FCRA violation because "inaccurate credit information in a credit report alone is not a violation of the FCRA"). Regarding Ms. Zellerino's first claim against Armored for obtaining her consumer report without a Permissible Purpose in violation of § 1681b(f), Ms. Zellerino did not know, and could not have known, of the specific violation alleged in her complaint until she discovered that "Amored [sic] Investment Group" was really "Armored Investment Group" and that Armored was in the business of marketing debt settlement schemes, which is not a Permissible Purpose under the FCRA. (*See* Dkt. 55 ¶¶ 32–34.)

Regarding her second claim against Armored, for falsely certifying its purpose in requesting her consumer report, Ms. Zellerino had no way of knowing, simply by looking at her consumer report, that "Amored [sic]" had obtained her private information under false pretenses. *See Drew*, 690 F.3d at 1110 (holding that plaintiff was not on notice of his claims when he had no way of knowing "what information was available to the bank for its investigation, and had no basis in June 2004 to judge whether the investigation was reasonable"). Even more so, Ms. Zellerino plainly had no knowledge of Mr. Roosen's and Mr. Shubash's identities merely from looking at her consumer report, and the Armored Defendants have not proved, as they cannot prove at this stage, when she discovered their identities, much less when she discovered that they had requested her report under false pretenses without a Permissible Purpose. The Court should therefore deny the Armored Defendants' limitations motion. *Drew*, 690 F.3d at 1111 (reversing grant of summary judgment).

**B. Ms. Zellerino has adequately alleged that Mr. Roosen and Mr. Shubash personally participated in Armored's activities to warrant personal liability under the FCRA.**

Because Ms. Zellerino has pled that Mr. Roosen and Mr. Shubash were personally involved in the alleged wrongdoing, the Court should also deny

1  Mr. Roosen and Mr. Shubash's motion to dismiss Ms. Zellerino's claims against
2  them individually.

3        Case law under the FCRA provides that individuals who act on behalf of a
4  corporation that has no Permissible Purpose may themselves be held personally
5  liable for violations of the FCRA. *Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir.
6  1978) (holding that users of consumer information may be liable for obtaining credit
7  reports under false pretenses); *Ippolito v. WNS, Inc.*, 864 F.2d 440, at 448 n.8 (7th
8  Cir. 1988) (stating that "[a] person may violate the FCRA by obtaining a consumer
9  report through the use of false pretenses"); *Yohay v. City of Alexandria Employees*
10 *Credit Union*, 827 F.2d 967, 971–72 (4th Cir. 1987); *Heath v. Credit Bureau of*
11 *Sheridan*, 618 F.2d 693, 697 (10th Cir. 1980). More specifically, corporate officers
12 may be held personally liable where they have themselves acted to impermissibly
13 access a consumer report. *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991)
14 (holding that CEO was personally liable for accessing credit report because "both
15 California corporate law and federal common law hold that corporate officers are
16 personally liable for their torts even if the torts were committed on behalf of the
17 corporation").

18       Contrary to their assertion that Ms. Zellerino's claims are made "without any
19 reference to specific actions of either Defendant Roosen or Defendant Shubash,"
20 (Dkt. 56 at 9), Ms. Zellerino has pled that Mr. Roosen and Mr. Shubash had a
21 subscriber agreement with Datamyx and were personally involved in purchasing
22 consumer reports without a Permissible Purpose. (Dkt. 55 ¶ 42 ("In 2015,
23 Ms. Zellerino discovered that Datamyx, as Equifax's agent and/or as a reseller, sold
24 such lists to Roosen and Shubash, acting on behalf of Armored, pursuant to a
25 subscriber agreement."); *see Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d
26 725, 734 (9th Cir. 1999) ("A corporate officer or director is, in general, personally

27
28

liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.") Ms. Zellerino has further pleaded that "Roosen and Shubash falsely certified to Datamyx that they would use the reports for a Permissible Purpose," (Dkt. 55 ¶ 45), and that "Roosen and Shubash, acting as Armored's principals and alter egos, obtained the list containing Ms. Zellerino's consumer report, along with the consumer reports of thousands of other people, for the illegal purpose of soliciting debt settlement business for Armored and/or for improper direct marketing on behalf of their other businesses." (*Id.*) These specific factual allegations regarding acts that Mr. Roosen and Mr. Shubash personally performed are plainly sufficient to state a claim, and their motion should be denied on that basis alone. *Zellerino I*, 118 F. Supp. 3d at 949 ("the plaintiff has stated plausible claims against the defendants in their personal capacities"); *Coastal*, 173 F.3d at 734.

In addition, Ms. Zellerino has plausibly pleaded that Mr. Roosen and Mr. Shubash acted at all times as Armored's agents and alter egos. (Dkt. 55 ¶¶ 7–8.) Under California law, "'[t]here is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case." *Pacific Bell Tel. Co. v. 88 Connection Corporation*, No. 15-cv-04554, 2016 WL 3257656, at *2 (N.D. Cal. June 14, 2016) (citing *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985).) "[I]n order for an alter ego liability to apply, two conditions must be met: '(1) such a unity of interests in ownership exists so as to dissolve the separate corporate personalities of the parent and the subsidiary, relegating the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former, and (2) an inequitable result will occur if the conduct is treated as that of the subsidiary alone." *Lincoln Imp. Ltd., Inc. v. Weaver Flower Co.*, No. 11-

cv-1098, 2012 WL 1048531, at *4 (C.D. Cal. March 27, 2012). Among the factors to be considered are:

> [c]ommingling of funds and other assets[;] ... the unauthorized diversion of corporate funds or assets to other than corporate uses; ... the treatment by an individual of the assets of the corporation as his own; ... the failure to maintain minutes or adequate corporate records ...; sole ownership of all of the stock in a corporation by one individual ... [;] the failure to adequately capitalize a corporation; ... the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; ... the disregard of legal formalities .... [;] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors ... [;] the use of a corporation as a subterfuge of illegal transactions ....

*Pacific Bell*, 2016 WL 3257656 at *3 (quoting *Leek v. Cooper*, 194 Cal. App. 4th 399, 417 (2011).) These factors are "not exhaustive," and "[o]thers may be considered 'under the particular circumstances of each case.'" *Id.*

Ms. Zellerino here has pled numerous facts supporting her alter ego allegations against Mr. Roosen and Mr. Shubash, among them:

- "Roosen and Shubash exercised pervasive and continual control over the day-to-day operations of Armored such that Armored operated at all relevant times as an agent of Roosen and Shubash," (Dkt. 55 ¶ 7);

- "[T]here existed such a unity of interest between Roosen and Shubash and Armored that the separate personalities of the corporation and the individuals no longer existed," (Dkt. 55 ¶ 8);
- "Roosen and Shubash used the same office as Armored," (*id.*);
- Roosen and Shubash "used Armored as a mere shell, instrumentality, or conduit for their business operations," (*id.*);
- "All of Armored's stock was owned by Roosen and Shubash," (*id.*);
- Roosen and Shubash "are close business associates and have operated a number of businesses together over many years," (*id.*);

- Roosen and Shubash, through Armored and other entities they own and control, also operate or operated other direct marketing businesses (including another debt-settlement business called LHDR, Inc.), a marijuana-themed merchandising business, a legal document preparation company, and a home-loan modification business that targeted consumers having difficulty making their mortgage payments, (*id.* ¶ 34);
- "Armored operated under a number of assumed d/b/a names, creating public confusion regarding Armored's identity, (*id.* ¶ 8); and
- "Roosen and Shubash used these multiple entities to conceal their improper use of consumer reports, effectively using one entity to obtain the reports and another to deliver improper marketing materials." (*Id.*)

This detailed pleading is more than sufficient to allege that there was "such a unity of interests in ownership … so as to dissolve the separate corporate personalities of the parent and the subsidiary, relegating the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former." *Lincoln Imports*, 2012 WL 1048531, at *4; *see also Pacific Bell*, 2016 WL 3257656, at * 7 (explaining that pleading alter ego is "not a merits inquiry" and that the "pleading standard 'does not require "detailed factual allegations"'").

These pleaded facts show that "an inequitable result will occur" if Mr. Roosen and Mr. Shubash are allowed to engage in wrongdoing, purchasing consumer reports without a Permissible Purpose, while using the corporate form as a shield from personal liability. *Pacific Bell*, 2016 WL 3257656, at *6 (holding that pleading that defendants had engaged in a "scheme" to avoid payment of FCC-mandated fees sufficiently alleged "an 'inequitable result' for purposes of alter-ego liability"); *Lincoln Imports Ltd.*, 2012 WL 1048531, at *4 (holding that alter ego had been sufficiently pled). The Court should therefore deny Mr. Roosen and Mr. Shubash's motion to dismiss.

## C. Attorney's fees are plainly not warranted.

The Court should also deny the Armored Defendants' Motion for Attorney's Fees under § 1681n. This section authorizes a court to award attorney's fees "upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment." 15 U.S.C.A. § 1681n(c).

The Armored Defendants accuse Ms. Zellerino of "bad faith," based on their assertion that "Plaintiff has actual knowledge that Armored made a promotional inquiry into her consumer credit information as of January 1, 2013." (Dkt. 56 at 10.)

As explained in response to the Armored Defendants' limitations motion,[3] however, the FCRA does not prohibit making promotional inquiries for consumer credit information. 15 U.S.C. § 1681a(l). To the contrary, the FCRA allows promotional inquiries so long as the requester intends to extend a "firm offer of credit or insurance" to the persons meeting the specified criteria. *Id.* Simply knowing that Armored—putting aside that what appeared on her reports was actually "Amored [sic]"—had made a promotional inquiry thus could not possibly have constituted discovery of an FCRA "violation." 15 U.S.C. § 1681p. (providing that limitations begins to run on the "discovery by the plaintiff of the **violation** that is the basis for such liability") (emphasis added); *Drew*, 690 F. Supp. 3d at 1110 (holding that "material issues of fact remain as to 'whether plaintiffs knew or had reason to know of the specific' violation"). Many legitimate banks and credit furnishers make promotional inquiries every day, and many consumers see reports noting that such inquiries have been made, without any FCRA violation ever occurring. *See Andrews*, 700 F. Supp. 2d at 1278 ("There are a dozen plausible reasons that a credit report may contain inaccurate information which would not be unlawful under the FCRA."). The date when Ms. Zellerino saw that "Amored [sic]" had made a promotional inquiry is therefore irrelevant to limitations.

As a threshold matter, fees should be denied because the Armored Defendants should not be successful on their motion. *See* 15 U.S.C. § 1681n(c) (authorizing fees only for an "unsuccessful" pleading). But even if the Armored Defendants were to prevail on their motion, they have shown no bad faith on Ms. Zellerino's part. *River Oaks Homeowners Prot. Comm., Inc.*, 32 Fed. App'x 929, 930 (9th Cir. 2002) (reversing award of fees under 15 U.S.C. § 1681n(c) as abuse of discretion where party seeking fees had not shown bad faith); *see Ryan v. Trans Union*

---

[3] *See* Section IV.A, *supra.*

1   *Corp.*, No. 99-cv-0216, 2001 WL 185182, at *5 (N.D. Ill. Feb. 26, 2001) (denying

2   attorney's fees under § 1681n for filing of the Complaint, explaining that "the Court

3   is inclined to give Ryan the benefit of the doubt and concludes that defendants have

4   failed to establish that he actually realized, at the time he filed suit, that his core

5   allegations were untrue"); *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 119

6   (E.D.N.Y. 1999) (denying fees and observing that "[f]ees are not awarded simply

7   because a party prevails in litigation"). Far exceeding the requirements of good faith,

8   Ms. Zellerino's opposition to the Armored Defendants' motion is based on on-point

9   Ninth Circuit authority holding that a plaintiff does not discover her FCRA claim

10  until she is in possession of **all** the facts constituting the violation. *Drew*, 690 F.3d at

11  1110. The Armored Defendants therefore are not entitled to prevail on their Motion,

12  much less to be awarded fees.

### V. CONCLUSION

13
14          For the reasons stated above, the Court should deny the Armored

15  Defendants' Motion to Dismiss.

16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: July 15, 2016                Respectfully submitted,

                                    By: */s/ Michael A. Caddell*
                                        Michael A. Caddell (SBN 249469)
                                        mac@caddellchapman.com
                                        Cynthia B. Chapman (SBN 164471)
                                        cbc@caddellchapman.com
                                        Amy E. Tabor (SBN 297660)
                                        aet@caddellchapman.com
                                        Benjamin C. Wickert (*pro hac vice*)
                                        bcw@caddellchapman.com
                                        CADDELL & CHAPMAN
                                        628 East 9th Street
                                        Houston, TX 77007-1722
                                        Tel.: (713) 751-0400
                                        Fax: (713) 751-0906

                                        */s/ Lee A. Sherman*
                                        Lee A. Sherman (SBN 172198)
                                        lsherman@ctsclaw.com
                                        Suren N. Weerasuriya (SBN 278521)
                                        sweerasuriya@ctsclaw.com
                                        CALLAHAN THOMPSON SHERMAN &
                                        CAUDILL, LLP
                                        2601 Main Street, Suite 800
                                        Irvine, CA 92614
                                        Tel.: (949) 261-2872
                                        Fax: (949) 261-6060

                                        */s/ Ian B. Lyngklip*
                                        Ian B. Lyngklip (*pro hac vice forthcoming*)
                                        ian@michiganconsumerlaw.com
                                        LYNGKLIP & ASSOCIATES CONSUMER
                                        LAW CENTER, PLC
                                        24500 Northwestern Highway, Ste. 206
                                        Southfield, MI 48075
                                        Tel.: (248) 208-8864
                                        Fax: (248) 208-9073

                                        *Attorneys for Plaintiff Janice Zellerino*

# CERTIFICATE OF SERVICE

I, Amy E. Tabor hereby certify that on July 15, 2016 this document was filed with the Court using the CM/ECF system and thereby served on all counsel of record.

*/s/Amy E. Tabor*
Amy E. Tabor